### W. W. MONTAGUE & CO. et al. v. LOWRY et al.

(Circuit Court of Appeals, Ninth Circuit. February 17, 1902.)

#### No. 697.

MONOPOLIES—ANTI-TRUST ACT—COMBINATION IN RESTRAINT OF INTERSTATE COMMERCE.

The Tile, Mantel & Grate Association of California was organized by defendants, who were dealers in tiles and similar articles, for the declared purpose of uniting "all acceptable dealers" in tiles, fireplace fixtures, and mantels in San Francisco and vicinity (within a radius of 200 miles), and all American manufacturers of tiles and fireplace fixtures. The articles prescribed that other local dealers who had an established business and carried a stock of a stated value, and who were "acceptable," might, on motion of a member, be permitted to join, and that all manufacturers of tiles in the United States might become members by signing the constitution and paying an entrance fee. The local members were bound by the articles not to buy goods from any manufacturer who was not a member, nor to sell goods to other dealers not members, at less than list price, which was about double the market price, and the manufacturing members were bound not to sell to any dealer within the prescribed territory who was not a member. Held, that such association was a combination in restraint of trade among the states, illegal under section 1 of the anti-trust act of July 2, 1890 (26 Stat. 209), and also an attempt to monopolize a part of the trade and commerce among the states, within the prohibition of section 2, by shutting out from such trade all local dealers who were not members, and that defendants were liable in damages, under section 7 of the act, to such a dealer to whom a manufacturer in another state refused to sell tiles, as it had previously done, on the sole ground that such dealer was not a member of the association.

In Error to the Circuit Court of the United States for the Northern District of California.

See 106 Fed. 38.

The writ of error in this case is brought to review the judgment of the circuit court rendered in an action which the defendants in error brought against the plaintiffs in error under the act of congress of July 2, 1890 (26 Stat. 209), commonly known as the "Sherman Anti-Trust Act." The complaint alleged that the plaintiffs therein had been injured in their business by reason of the illegal combination between the defendants therein made under the name of the Tile, Mantel & Grate Association of California. The substantial facts alleged in the complaint and proved on the trial were that for a number of years prior to the year 1898 the defendants in error had been engaged in the business of buying and selling and setting tiles, mantels,

and grates in the city of San Francisco, and that the tile which they used in their business was purchased from some of the various tile manufacturers in the states of Ohio, Indiana, Kentucky, New Jersey, and Pennsylvania, who subsequently entered into the association, there being no manufactures of tiles in the state of California; that by industry and attention thereto the defendants in error had established a profitable business; that in the year 1898 the plaintiffs in error formed the association, the object of which, as declared in its articles, was "to unite all acceptable dealers in tiles, fireplace fixtures, and mantels in San Francisco and vicinity (within a radius of two hundred miles), and all American manufacturers of tiles, and by frequent interchange of ideas advance and promote the mutual welfare of its members." As to membership, it provided that any individual, corporation, or firm engaged in the tile, mantel, and grate business in San Francisco, or within a radius of 200 miles therefrom, having an established business, and carrying not less than $3,000 worth of stock, and having been proposed by a member in good standing and elected, and having signed the constitution and by-laws, and paid an entrance fee of $10, might become a member. It was also provided that all manufacturers of tiles and fireplace fixtures throughout the United States might become nonresident members upon the payment of an entrance fee and signing the constitution and by-laws. Section 7 of the by-laws forbade members of the association to purchase goods from any manufacturer unless the latter were a member of the association, and forbade them to "sell or dispose of, directly or indirectly, any unset tile for less than list prices to any person or persons not a member of this association, under penalty of expulsion from the association." It provided, further, that any manufacturer selling goods to others than members of the association should forfeit membership. It was shown that the list price referred to in section 7 was a nominal catalogue price of goods fixed by the manufacturers for convenience, but that in selling to members of the association, and, prior to forming the association, in selling to the trade generally, the manufacturers had allowed large discounts from the list prices amounting to something more than 50 per cent. thereof. The defendants in error alleged in their complaint that it required the unanimous consent of the association to become a member thereof, and that by reason of certain business difficulties there were members of the association who were antagonistic to them, and who would not have permitted them to join if they had applied, and that they were not eligible to join the association for the further reason that they did not carry at all times stock of the value of $3,000. They also alleged that the association constituted a trust and conspiracy in restraint of interstate trade and commerce, and a monopoly of the grate, tile, and mantel trade between the parties engaged therein. The jury found damages for the defendants in error in the sum of $500, and for that amount judgment was rendered in their favor, and for the further sum of $750 for an attorney's fee, which was allowed by the court.

P. F. Dunn and Linforth & Whitaker, for plaintiffs in error.

J. C. Campbell, W. H. Metson, and R. W. Campbell, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Two questions are presented upon the writ of error—First, did the association constitute a combination which was within the prohibition of the act of July 2, 1890? And, second, was the amount of the attorney's fee allowed by the court excessive? In answering the first question, we must first take into the account the declared purpose of the association. It was formed to unite all acceptable dealers engaged in the tile, grate, and mantel business in San Fran-

cisco, and within a radius of 200 miles therefrom, and all American manufacturers of tiles. In its scope it included upon the one hand every manufacturer of tiles wherever situate in the United States, and upon the other the six firms of local dealers who joined the association at its formation, together with those who might be permitted thereafter to become members. The defendants in error were not invited to enter into the combination. The rules prescribed that others in the same line of business, who had an established business and carried stock of the value of $3,000, and who were "acceptable," might upon the proposition of one who was already a member, and upon the vote of the association, be permitted to join the combination. The evidence shows that the defendants in error after the formation of the association made efforts to purchase tile from manufacturers in Indiana with whom they had before been doing business, and that their orders were declined, and they were notified that they could not purchase goods from the manufacturers unless they became members of the association. They could not obtain tile from the local dealers in San Francisco unless they paid the "list" price, which was more than double the price which members of the association were required to pay.

We think that, in the light of these facts, the association clearly comes within the prohibition of the act of congress. It has a direct tendency to restrain trade between the different states and to create a monopoly. In principle it would be the same if it were an association between all the manufacturers of the United States in that line of goods and a single dealer in California, whereby all other resident dealers were shut out and all competition between local dealers extinguished. Section 1 of the act of July 2, 1890, provides as follows: "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states or with foreign nations is hereby declared to be illegal;" and it proceeds to denounce a penalty against any one who shall make any such contract or engage in any such combination or conspiracy. Interstate commerce "includes the purchase, sale and exchange of commodities" (Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 203, 5 Sup. Ct. 828, 29 L. Ed. 158); and every agreement which has the tendency to restrain the purchase, sale, and exchange of commodities is brought within the prohibition of the statute (Addyston Pipe & Steel Co. v. U. S., 175 U. S. 238, 20 Sup. Ct. 96, 44 L. Ed. 136). The combination in the case before the court evidently tended to restrain trade. The defendants in error who had been regular purchasers of goods from the manufacturers were shut out from dealing with them from the time when the association was formed. Their orders to the manufacturers for goods were rejected for the express reason and for no other reason than that they were not members of the association.

The tendency of the combination was also to create a monopoly in the hands of the local members thereof. Section 2 of the act includes within its prohibition "every person who shall monopolize or attempt to monopolize or conspire with any other person or persons to monopolize any part of trade or commerce among the several states or with foreign nations." The combination in the case before the court

was not one such as might lawfully have been made between the residents of a single state for the purpose of regulating the methods of conducting their business or fixing the prices of goods or for other legitimate purposes, such as was sustained by the court in U. S. v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325, where it was held that an agreement between manufacturers in a state bore no distinct relation to commerce between the states or with foreign nations, but it is one that brings within its scope not only local dealers, but all the wholesale dealers in the same kind of goods in all the states. Said the court in U. S. v. E. C. Knight Co., 156 U. S. 16, 15 Sup. Ct. 255, 39 L. Ed. 325: "It is not essential that the result of the combination be a complete monopoly. It is sufficient if it merely tends to that end and to deprive the public of the advantages which flow from competition." The local members were bound by the articles of the association not to sell goods to nonmembers except at prices which were more than double the prices which the members paid and which all dealers had paid before the association was formed, and the manufacturers were bound not to sell to nonmembers at any price or under any conditions. The testimony indicated that the defendants in error had been in constant competition with the San Francisco firms which entered into the association, and had bid against them on contracts for work. The formation of the association shut off all such competition. The defendants in error were powerless to compete with local firms which possessed such advantages over them. The necessary effect of the combination was to crowd out of business every local dealer who was not a member, and thereby to create a monopoly in the hands of those who were. It is argued that the defendants in error might have joined the association had they chosen to do so, and that thereby they might have availed themselves of the privileges of membership. To this it is sufficient to say that it does not appear that they would have been admitted to membership if they had applied. Under the by-laws they were not eligible, for the reason that they did not at all times carry the requisite amount of stock, and if they had possessed the necessary amount of stock they had no assurance that they were "acceptable" to the members. On the contrary, the fact that they were not invited to enter the combination when it was formed was a distinct intimation to them that they were not acceptable. But it is immaterial whether they would or would not have been admitted into the combination. To protect their business and secure their legal rights they were not obliged to submit an application for membership in such a combination with the possibility of its rejection, or to submit themselves to the rules and exactions of the association. It is clear, also, that the tendency of the combination was to prevent others from engaging in the business. No one could become a member who had not "an established business," and it is too evident to admit of denial that no one could establish a business in competition with the members of the association who possessed such advantage in dealing with the manufacturers.

It is earnestly contended that the case in its principle comes within the doctrine of Hopkins v. U. S., 171 U. S. 578, 19 Sup. Ct. 40, 43 L. Ed. 290, and Anderson v. Same, 171 U. S. 604, 19 Sup. Ct. 50,

43 L. Ed. 300; but we think it is clearly distinguishable from those cases.    In the Hopkins Case the association, which was claimed to have been formed in violation of the act, was a local voluntary association of men whose business it was to receive at Kansas City consignments of cattle shipped from owners in various states, and to feed, prepare for market, and sell the same, and pay the owners their portion of the proceeds after deducting charges and expenses.    The rules of the association forbade members to buy stock from one who was not a member or to transact business with any person who violated its rules and regulations.    The court held that the business of the members of the association was not interstate commerce, and that the agreements or contracts relating to their business were not in restraint of interstate trade, for the reason that trade between the states was not affected by the combination, which was a purely local one, comprising only members of the state in which it was formed.    The Anderson Case was similar to the Hopkins Case, with the exception that the members of the association were purchasers of certain classes of live stock instead of agents for the sale thereof.    There was no association or combination between such purchasers and the vendors of the stock, and no monopoly was created or was intended to be thereby created.    The association itself transacted no business.    The court said:

"Those who are members thereof compete among themselves and with others who are not members for the purchase of the cattle, while the association itself has nothing whatever to do with transportation nor with fixing the prices for which the cattle may be purchased or thereafter sold. * * * A lessening of the amount of the trade is neither the necessary nor direct effect of its formation, and in truth the amount of that trade has greatly increased since the association was formed, and there is not the slightest evidence that the market prices of cattle have been lowered by reason of its existence.    There is no feature of monopoly in the whole transaction."

The difference between those cases and the case at bar is apparent. The resident members of the Tile, Mantel & Grate Association, while they may compete with themselves, have no competition with those who are not members, for the latter are practically excluded from doing business within the portion of the state of California which is included in the prescribed area; and instead of being a combination between purchasers only, as was the fact in the Anderson Case, it is a combination between manufacturers and buyers of different states, which brings together on the one hand all the wholesale dealers in the United States in that line of goods, and on the other hand the chosen few who are permitted to obtain goods and supply the local demand.

We find no ground for disturbing the finding of the circuit court concerning the amount of the attorney's fee to be allowed to the defendants in error.

The judgment is affirmed.